IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Randy J. Spencer,                          :
                    Appellant      :
                                          :
          v.                          :
                                          :
City of Franklin and County    :   No. 648 C.D. 2022
of Venango Tax Claim Bureau  :   Argued: October 10, 2023


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED: November 6, 2023


Randy J. Spencer (Spencer) appeals from an order of the Court of Common Pleas of Venango County (trial court) denying Spencer's petition to compel conveyance of real property held in repository by the County of Venango Tax Claim Bureau (Bureau). Upon review, we affirm the trial court's order.


**I. Background**

Spencer wishes to buy four parcels of real property in the City of Franklin (City) that were acquired by Venango County (County) at tax sales and are being held in repository.[1] *See Spencer v. City of Franklin* (C.P. Venango, No. 632-

---

[1] Spencer initially submitted bids to buy five properties, but only four of them are at issue in this appeal.

2021, filed Aug. 19, 2022), Op. Pursuant to Pa.R.A.P. 1925(a), slip op. (1925(a) op.) at 1. He submitted bids to the Bureau, which duly notified the City of his offers. *See id.* However, after a vote at a regular meeting of the City Council, the City sent the Bureau letters objecting to the sales. *See id.* The Bureau accordingly rejected Spencer's bids. *See id.*

Spencer, acting *pro se*, filed a document titled "Motion for Rule to Show Cause" in the trial court against the City and the Bureau, alleging that the City unreasonably withheld its consent to the sales and seeking to compel the acceptance of his bids and the conveyance of the properties to him. 1925(a) op. at 1; Reproduced Record (RR) at 4a-6a. The trial court's Civil Case Docket Report reflects that Spencer's filing was treated as a civil complaint. *See* Notice of Appeal, Civ. Case Docket Report (designating the "Case Type" as "Complaint"). The parties thereafter proceeded to file pleadings pursuant to the Pennsylvania Rules of Civil Procedure, including answers, new matter, and replies to new matter. *See* RR at 2a. Spencer, still acting *pro se*, then filed a motion for judgment on the pleadings. *See id.* at 2a & 37a. However, when the parties appeared before the trial court for argument on the motion for judgment on the pleadings, they declared themselves ready to proceed with an evidentiary hearing. *See id.* at 35a-37a. Acceding to the parties' wishes, the trial court held a hearing and the parties presented all of their evidence, as well as some oral argument. *See generally id.* at 35a-118a.

After the hearing, the trial court issued an order denying the relief Spencer had sought in what the trial court labeled as his "petition." 1925(a) op. at 3. In its 1925(a) opinion, the trial court explained its reasoning as follows:

> Of particular significance was [the City Code Enforcement Officer's] testimony that . . . Spencer has a history of allowing properties he owns in an adjoining jurisdiction to become blighted. Spencer is involved in an ongoing

dispute with the State regarding vehicle parts and other items of his personal property that flowed from his land into the Allegheny River during a flood. The City is concerned that if Spencer acquires [the] parcels held in repository, he will move abandoned vehicles from his other land onto the parcels in the [C]ity.

*Id.* at 2. Applying Section 627 of the Real Estate Tax Sale Law (RETSL),[2] 72 P.S. § 5860.627, to the evidence adduced at the hearing, the trial court found the City did not unreasonably withhold its consent to the sales. *Id.* at 3.

Spencer did not file a motion for post-trial relief. Instead, he filed this immediate appeal of the trial court's order.

## II. Issues

On appeal,[3] Spencer raises two overarching issues, which we paraphrase as follows.

First, Spencer posits that the City's objections to his bids constituted adjudications that required adherence to procedures specified in applicable provisions of administrative law. He contends that the City did not follow the requisite procedure before sending its objection letters, and therefore, the Bureau's resulting rejections of Spencer's bids were void *ab initio*. Spencer suggests that the only proper remedy is to compel conveyance of the properties to him.

---

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803. Sections 625-630 of the RETSL were added by the Act of July 3, 1986, P.L. 351, 72 P.S. §§ 5860.625-5860.630.

[3] "Our scope of review of a judgment following a non-jury trial is limited to determining whether the trial court's factual findings are supported by [substantial] evidence and whether the trial court committed an error of law." *GAI Consultants, Inc. v. Homestead Borough*, 120 A.3d 417, 422 n.4 (Pa. Cmwlth. 2015) (first citing *McGaffic v. City of New Castle*, 74 A.3d 306, 310 n.8 (Pa. Cmwlth. 2013) (*en banc*); and then citing *Commonwealth v. Hoffman*, 938 A.2d 1157, 1160 n.10 (Pa. Cmwlth. 2007)).

3

Second, Spencer asserts that the City acted unreasonably in objecting to his bids. He claims the City improperly relied on a recent amendment to Section 627 of the RETSL that had not yet become effective when the City sent its objection letters. He argues that the Bureau's rejection of his bids also violated the purpose of the repository provision of the RETSL to foster removal of properties from repository, which should have been paramount in the City's consideration of his bids.

Before we may reach either of these issues, however, we must first determine whether this Court has jurisdiction over this appeal. Specifically, we must determine the nature of Spencer's action in the trial court. If it was a statutory petition authorized under the RETSL, the rules of civil procedure were not applicable. However, if it was a civil complaint, as it was designated by the trial court, it was subject to the rules of civil procedure, including the rule governing motions for post-trial relief. In that event, Spencer's failure to file a motion for post-trial relief constituted a failure to preserve any issues for appeal.

### III. Discussion

### A. Preservation of Issues

A civil action may be commenced in one of two ways: a praecipe for a writ of summons or a complaint. Pa.R.Civ.P. 1007. Here, Spencer's initial filing in the trial court was designated as a complaint in the Civil Case Docket Report. Notice of Appeal, Civ. Case Docket Report. Original process, be it a writ of summons or a complaint, must be served on the party defendant by a sheriff. *See* Pa.R.Civ.P. 400(a). That was done in this case. The parties then filed a series of civil pleadings including answers, new matter, and replies to new matter. *See* RR at 2a.

4

By contrast to a complaint, a motion or petition is not original process, but rather, an application for relief filed subsequent to the complaint. *See* Pa.R.Civ.P. 206.1(a). A rule to show cause proceeds under petition practice. *See* Pa.R.Civ.P. 206.4(a) & 206.7. Documents filed in the course of petition practice must be served on the opposing party's counsel of record but may be served by regular mail. *See* Pa.R.Civ.P. 404(a)(1).

Where the rules of civil procedure apply, a party aggrieved by either a jury verdict or a trial court's order following a bench trial must file a motion for post-trial relief raising all trial court errors the party intends to raise on appeal. Pa.R.Civ.P. 227.1(c) ("Post-trial motions shall be filed within ten days after (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or (2) notice of nonsuit or the filing of the decision in the case of a trial without jury."). Any issue not raised in the post-trial motion is not preserved for appeal. *See L.B. Foster Co. v. Lane Enters., Inc.*, 710 A.2d 55, 55 (Pa. 1998) (*per curiam*) (concluding that parties must "file post-trial motions in order to preserve issues for appeal. If an issue has not been raised in a post-trial motion, it is waived for appeal purposes.") (first citing *Benson v. Penn Cent. Transp. Co.*, 342 A.2d 393 (Pa. 1975); and then citing *Commonwealth v. Metz*, 633 A.2d 125 (Pa. 1993)); *Liparota v. State Workmen's Ins. Fund*, 722 A.2d 253, 256 (Pa. Cmwlth. 1999) (holding that "[w]here a party fails to file timely post-trial motions after a bench trial, no issues are preserved for this Court to review").

Here, neither the trial court nor any party raised the issue of whether Spencer was required to file a post-trial motion in order to preserve his claims of error for appeal in this Court. However, this Court may consider it *sua sponte*. *See Borough of Shenandoah v. Cruz* (Pa. Cmwlth., No. 715 C.D. 2016, filed May 22,

2017), slip op. at 3 n.4 (explaining that "[e]ven where neither party has raised a failure to preserve issues for review by not filing post-trial motions pursuant to Pa.R.C[iv].P. [] 227.1, that failure does not prevent this Court from doing so *sua sponte*") (citing *Borough of Harveys Lake v. Heck*, 719 A.2d 378, 380 n.4 (Pa. Cmwlth. 1998)).

We find *Battisti v. Tax Claim Bureau of Beaver County*, 76 A.3d 111 (Pa. Cmwlth. 2013), instructive here. In *Battisti*, a taxpayer filed objections to a tax upset sale at which her property was sold, alleging lack of the requisite advance notice of the upset sale. The tax claim bureau filed a motion for judgment on the pleadings, which the court granted. The taxpayer appealed, arguing that the court erred by failing to allow her to present evidence. *See id.* at 113-14.

In analyzing the procedure to be followed for adjudicating the taxpayer's objections to the upset sale, this Court explained that a taxpayer objecting to an upset sale may choose between filing a petition to set aside the sale under Section 607 of the RETSL, 72 P.S. § 5860.607, and a civil complaint in equity. *See Battisti*, 76 A.3d at 114. Although the statutory procedure set forth in Section 607 is not the exclusive method of objecting to a tax upset sale, a taxpayer who elects to proceed under Section 607 must follow the statutory procedures provided therein, according to the practice of the court where the petition is pending; papers filed in those procedures are not pleadings, and the Pennsylvania Rules of Civil Procedure do not apply. *See id.* at 114-15. The court in *Battisti* had a standing order setting forth procedures for disposing of petitions under Section 607 of the RETSL, and that order did not provide a mechanism for disposition based on the petition and answer without taking evidence. *See id.* at 115. Therefore, the lower court erred in granting judgment on the pleadings. *See id.*

6

Here, Spencer's claim arises under Section 627 of the RETSL governing sales from repository, not objections to an upset sale under Section 607. Unlike Section 607 as discussed in *Battisti*, Section 627 has no related provision in the RETSL that prescribes a procedure to challenge the Bureau's acceptance or rejection of a bid to purchase a repository property. Therefore, unlike the taxpayer in *Battisti*, Spencer's only option in this case was to commence a civil action by filing original process, *i.e.*, a complaint, in the trial court. That is what he did. Therefore, this case was governed in the trial court by the rules of civil procedure.

Although the trial court originally anticipated argument on the motion for judgment on the pleadings, the parties, by mutual agreement and with the trial court's acquiescence, proceeded by hearing and presented all of their testimonial and documentary evidence to the trial court. When the parties proceed in such a fashion, the proceeding constitutes a bench trial. *See Gardner v. Carter* (Pa. Cmwlth., No. 413 C.D. 2020, filed Mar. 1, 2023),[4] slip op. at 5 (explaining that where a trial court held a hearing relating to a summary judgment motion, the court in effect conducted a bench trial). We conclude that is what happened here.

Because the trial court decided this case after conducting a bench trial, Spencer was required to file a motion for post-trial relief in order to preserve any issues for appeal. *See L.B. Foster Co.* Because he did not do so, he has failed to preserve any issues, and therefore, all issues are waived.[5]

---

[4] This unreported opinion of this Court is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[5] The Pennsylvania Supreme Court has explained that "[a]n appeal is 'quashed' when the court lacks jurisdiction over the appeal in the first instance . . . . When the appellant has failed to preserve issues for appeal, the issues are waived, and the lower court's order is more properly 'affirmed.'" *In the Interest of K.L.S.*, 934 A.2d 1244, 1246 & n.3 (Pa. 2007) (first citing *Sahutsky v. H.H. Knoebel Sons*, 782 A.2d 996, 1001 n.3 (Pa. 2001); and then citing *Sellers v. Runkle*, 267 A.2d 847, 848 (Pa. 1970)).

7

Nonetheless, for completeness, we address the issues raised on appeal. We discern no merit in those issues.

## B. Application of Administrative Law

As set forth above, Spencer argues that the City was required to provide him an administrative hearing before sending its objection letters, in that the votes regarding the objections constituted adjudications. On appeal, Spencer asserts that because the City's objections were improper, the Bureau's rejections of his bids were void *ab initio* and he is automatically entitled to conveyance of the properties to him. However, the record demonstrates that Spencer clearly and repeatedly waived this argument during the hearing before the trial court.

First, at the commencement of the hearing, during preliminary discussions with the trial court, Spencer's counsel, Michael R. Hadley, Esquire (Counsel or Mr. Hadley) discussed with the trial court the issue of applying administrative law and the available remedy if there had been an adjudication without a hearing. The following colloquy occurred:

> [COUNSEL FOR THE CITY]: . . . There has been an argument in the memorandum that [Spencer] wasn't provided an adjudicatory hearing on an administrative level. It is inapplicable in this matter . . . . I don't think Mr. Hadley realized that there had been a vote by City Council that had authorized moving forward with these objections. So, I don't believe that the adjudication issue, the agency law issue, is applicable here . . . .
>
> . . . .
>
> THE COURT: Well, Mr. Hadley, as far as administrative procedure . . . , you're talking about [the Local Agency Law, 2 Pa.C.S. §§ 551-555 & 751-754] and Section 553[, 2 Pa.C.S. § 553]?
>
> MR. HADLEY: Yes, Your Honor . . . . We believe [the Local Agency Law] applies . . . . [T]here's no precedent

8

either way for Your Honor. You'll have to make a case of first impression. Neither of us have a case that clearly says does a disgruntled or an unsuccessful bidder have an administrative remedy. But I think if you just look to the definition of the word adjudication - - and the broad phrase is any and all decisions - - findings that affect property and so forth - - we believe this was an adjudication and that it is properly before the Court. It's covered by the local procedures in the [Local Agency Law]. Apparently this has never come up anywhere before to give you precise guidance, so it's a matter how you read [the Local Agency Law].

THE COURT: You're not asking the Court then to effectively remand the case to the City for administrative hearing?

MR. HADLEY: You would absolutely have the right to since there was admittedly no hearing or opportunity to be heard before the City of Franklin. If you just said today I'm finding [the Local Agency Law] applies, you would have the authority to either conduct your own hearing today or remand it and say [to] the City hold a hearing. They'd have a right to do that, and you could issue that right now and there's nothing I could do about it. You have the discretion - - If you find [the Local Agency Law] applies, and there was no hearing or opportunity, you have the choice to do it yourself or remand it, and we couldn't disagree with any decision on appeal. That is your call how you want to proceed if you find [the Local Agency Law] applied. You can do it here originally or send it back to City Council . . . for a hearing opportunity.

. . . .

. . . Whoever you remand it [] to may be the Tax Claim Bureau and not the City . . . . I'm not sure that's not logical. They're also a defendant here. If you decided you would remand it for a record to be made, I would not object it be remanded to the . . . Bureau for that to be the venue for the proceeding.

THE COURT: Is there any provision for a hearing before the . . . Bureau on the issue?

9

MR. HADLEY: Yes, Your Honor. If you find there is a property right being adjudicated you are required to give notice and opportunity to be heard before the decision maker, be that the County or the City, make their decision.

THE COURT: What does the statute provide as far as how the . . . Bureau deal[s] with this?

MR. HADLEY: It would be just the regular . . . procedures as laid out in the [Local Agency Law]. As any other procedure that would come before any governing body, a local agency, that's how it would be conducted. That would be our anticipation.

THE COURT: The [RETSL] doesn't contain any provisions for a hearing?

MR. HADLEY: Any [sic] of itself it does not, but nor does many of them. They're all covered by the universal [Local Agency Law], which covers the generic term of adjudication be it in any number of the titles of our code.

THE COURT: So, your argument is this wasn't [sic] adjudication?

MR. HADLEY: Yes, Your Honor, certainly.

RR at 39a-46a. Thus, Counsel was not asserting that Spencer was automatically entitled to conveyance of the properties as a remedy for being denied a hearing, but rather, that he was merely entitled to a hearing and that such a hearing could properly take place in the trial court. The trial court then proceeded with the hearing on that basis.

At the conclusion of the hearing, the trial court specifically returned to a discussion of the administrative law issue, and the following colloquy occurred:

THE COURT: All right. Well, with regard to [the potential procedural requirements of administrative law] and as the discussion we had at the beginning today about whether there was a need for a hearing or some adjudication that either the City or the . . . Bureau did not comply with a requirement for a hearing before they made

10

their decision, I guess, Mr. Hadley, is that still an issue? I mean, I - - for practical purposes, if I would send it back I think you already know what the result would be. Do you want me to even consider that at this point?

MR. HADLEY: At this point, if you were to send it back, I think we would make the same record. When you decided to take the testimony and make a record; I think this is the record that you can decide to make unreasonable [sic].

THE COURT: You're not asking to send it back?

MR. HADLEY: I don't think we need to. You have made the record and the record before you is sufficient.

THE COURT: All right . . . . Anything else today?

. . . .

MR. HADLEY: No, Your Honor.

RR at 116a-17a.

The preceding colloquies establish unequivocally that the relief Spencer sought for the absence of an administrative hearing was that he be provided with a hearing – which he was, by the trial court, and with his Counsel's express consent. Having agreed to the hearing process as his remedy, Spencer will not now be heard to assert that he was entitled to some other relief instead. Accordingly, Spencer's first argument is without merit.

### C. Unreasonable Withholding of Consent

Section 627(a) the RETSL, as it was in effect until August 29, 2021, provided:

(a) The [B]ureau may, with the written consent of all the taxing districts where the property is located, accept an offer of any price for property placed in the "repository for unsold properties" without court approval and published notice of sale. Any taxing district may not unreasonably withhold its consent to the sale of the property.

11

*Former* 72 P.S. § 5860.627(a). Spencer asserts that the City violated former Section 627(a) because it acted unreasonably in objecting to his bids. We disagree.

Spencer claims the City improperly relied on the 2021 amendment to Section 627(a), which was enacted June 30, 2021, prior to the City's objection, but which did not become effective until August 29, 2021, after the City sent its objection letters. Section 627(a), as amended, now provides:

> (a) The [B]ureau may, with the written consent of all the taxing districts where the property is located, establish a minimum purchase price and accept an offer of any price equal to or greater than the minimum purchase price for property placed in the "repository for unsold properties" without court approval and published notice of sale. The [B]ureau shall require, as a condition of sale, that the purchaser provide an affidavit that includes the information specified under [S]ection 502-A.[6] Any taxing district may not unreasonably withhold its consent to the sale of the property and, if no consent is provided within sixty (60) days of the date notice was received by the taxing district, it shall be deemed that the taxing district consents to the sale of the property. As a condition of its consent, a taxing district may require that the purchaser:
>
> > (1) appear in person before the governing body of the taxing district charged with reviewing repository bids; and
> >
> > (2) provide all of the information required under [S]ection 502-A.

72 P.S. § 5860.627(a).

Section 502-A, referenced in Section 627(a), provides, in pertinent part:

> In order to register for a scheduled upset sale or judicial sale, the person must submit an application that includes the following information:

---

[6] Section 502-A of the RETSL, 72 P.S. § 5860.502-A, was added by the Act of June 30, 2021, P.L. 33, and provides advance registration requirements for bidders at upset or judicial sales.

12

(1) If the applicant is an individual, the individual's name, residential address and phone number.

(2) If the applicant is not an individual, the applicant's name, including the name of all officers, business address and phone number.

(3) If the applicant is a limited liability company, the names, business addresses and phone numbers of all members, managers and any other persons with any ownership interest or right in the limited liability company.

(4) An affidavit stating that the applicant:

> (i) is not delinquent in paying real estate taxes to any taxing district in this Commonwealth and that the applicant has no municipal utility bills, as defined in [S]ection 619.1(b), [72 P.S. § 5860.619a(b),[7]] that are not more than one year outstanding anywhere in this Commonwealth;

> (ii) is not bidding for or acting as an agent for a person who is barred from participating in the sale under [S]ection 601(d)[, 72 P.S. § 5860.601(d)];

> (iii) has not, within the three years preceding the filing of the application, engaged in a course of conduct or permitted an uncorrected housing code violation, as defined in [S]ection 619(e),[8] [72 P.S. § 5860.619(e),] to continue unabated after being convicted of an uncorrected housing code violation, as defined in [S]ection 619(e), and has not either:

---

[7] Added by the Act of December 21, 1998, P.L. 1008.

[8] Added by the Act of January 29, 1998, P.L. 24. Section 619(e) of the RETSL defines an "[u]ncorrected housing code violation" as "any conviction of a violation of the local building, housing, property maintenance or fire code which is not remedied within six (6) months of conviction." 72 P.S. § 5860.619(e).

13

(A) failed to maintain property owned by the applicant in a reasonable manner such that the property posed a threat to health, safety or property; or

(B) permitted the use of property in an unsafe, illegal or unsanitary manner such that the property posed a threat to health, safety or property . . . .

72 P.S. § 5860.502-A(1)-(4).

Here, Spencer does not allege that either the City or the Bureau required him to submit an application containing the information or affidavit required by Section 502-A before that requirement was in effect. He asserts, rather, that the City applied buyer qualification criteria in Section 502-A before those criteria were in effect. Specifically, the trial court found most significant the City's objections based on Spencer's "history of allowing properties he owns in an adjoining jurisdiction to become blighted," his "ongoing dispute with the State regarding vehicle parts and other items of his personal property that flowed from his land into the Allegheny River during a flood," and the City's "concern[] that if Spencer acquires parcels held in repository, he will move abandoned vehicles from his other land onto the parcels in the [C]ity." 1925(a) op. at 2. The trial court found these objections were not unreasonable, and we discern no merit in Spencer's contrary assertion.

Spencer mistakes the effect of Section 502-A. That provision sets forth only requirements for *documentation* of the qualifications of prospective purchasers of properties from a repository. Neither the City nor the Bureau required Spencer to submit such documentation prior to the effective date of the statutory amendment that added Sections 502-A and 619 to the RETSL. Spencer does not claim otherwise.

The previous absence of a statutory documentation requirement does not mean, however, that Spencer was automatically qualified or entitled to purchase

14

the properties. Specifically, nothing in the addition of the documentation requirements to the RETSL supports Spencer's assertion that the City could not previously have objected to Spencer's bids based on his ordinance violations related to other properties or his unrelenting resistance to ordinance enforcement efforts against him regarding those properties. Likewise, nothing in the 2021 amendment to Section 627(a) supports the proposition that an objection to a repository purchase would have been unreasonable prior to the effective date of the amendment where, as here, the bidder had longstanding ordinance violations and a history of litigating those violations and resisting their correction. To the contrary, adding a formal statutory requirement that the Bureau document a bidder's qualifications before a sale strongly supports the reasonableness of the City's objection where those qualifications were lacking. The City could always have objected on the basis of ongoing ordinance violations by a prospective purchaser, and such an objection would always have been reasonable. Notably, with regard to the reason for objection credited by the trial court, the City's counsel explained at the hearing:

> We would argue that given the history of litigations, as . . . Spencer himself testified, he's been dealing with alleged property violations for a number of years with Cranberry Township. I don't know - - I would like to believe that I could or that we could take him at face value when he says he will abide by all rules and regulations, and we disagree with that. So, we are very concerned about - - and to be very frank, we think this is not just for investment, that this is an intent to move these vehicles and these other junk items onto these properties in the City . . . . And if he does that, then we will be dealing with significant zoning ordinance, property maintenance issues, well head protection issues; and the like . . . . In our opinion, it doesn't take a rocket scientist to figure out he wants to access a lot of land for one purpose and one purpose only.

15

It's not for investment.[9]  It's to move his Jeep collection and or his abandoned vehicles from Cranberry Township into the City . . . and eliminate the problem that . . . he's trying to deal with, and we're not interested in inheriting the problem.

RR at 113a-14a.

Spencer admitted at the hearing that Cranberry Township has been asserting ordinance violations against him relating to his junk vehicles since 1994, that the violations were eventually adjudicated, and that he was fined $250,000.  *See* RR at 102a-03a.  Nonetheless, he continues to insist that the vehicles he stores on his properties in the township are not abandoned or junk vehicles, but a private collection.  *See id.* at 104a.  He also continues to dispute Cranberry Township's contention that he is operating a junkyard in violation of the township's zoning ordinance.  *See id.* at 105a.  Thus, Spencer's own testimony demonstrates the reasonableness of the City's unwillingness to "inherit[] the problem," *id.* at 114a, and amply supports the trial court's finding of fact that the City's objections to Spencer's bids were not unreasonable.

Further, the locations of Spencer's other properties outside the City are immaterial.  Whether in the City or elsewhere, Spencer's extensive history of ordinance violations regarding his use and maintenance of his properties was a red flag for the City.  We agree with the trial court that the City did not act unreasonably in objecting to proposed sales from the repository that would invite new problems with those properties.

Spencer argues further that the Bureau's rejection of his bids violated the purpose of the repository provision of the RETSL to foster removal of properties

---

[9] It is not surprising that the City and, apparently, the trial court did not credit Spencer's testimony that his sole reason for purchasing the properties at issue was simply to own them.  *See* RR at 106a.

16

from repository, which should have been paramount in the City's consideration of his bids. Once again, we disagree.

Section 625 of the RETSL, relating to sales from a repository, provides:

> It is the intent of this subarticle to establish a procedure to minimize the number of properties which the county, through the [B]ureau, holds because of delinquent tax claims, recognizing that some properties have little or no value except perhaps to a neighboring property owner and that holding such properties constitutes a cost to the [C]ounty and [B]ureau.

72 P.S. § 5860.625. Contrary to Spencer's claim, this language does not suggest that removing properties from repositories must be the *paramount* consideration of a taxing district. Removal of properties from a repository is a laudable goal, but it does not require the City to accept a purchase offer from an unacceptable buyer. Here, the City acted not only reasonably, but responsibly, in declining to achieve the removal of properties from the repository at the likely cost of future ordinance enforcement problems with the prospective buyer that would simply trade one set of costs for another.

For all of these reasons, we conclude that the trial court did not err in denying Spencer's petition to compel conveyance of the properties by the Bureau.

## IV. Conclusion

Based on the foregoing discussion, we affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Randy J. Spencer,

          Appellant

          v.

City of Franklin and County
of Venango Tax Claim Bureau

:
:
:
:
:
:
:
:
:

No. 648 C.D. 2022

# O R D E R

AND NOW, this 6th day of November, 2023, the order of the Court of Common Pleas of Venango County dated May 26, 2022, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge